**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TIFFANY FROST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-607-G** |
| | ) | |
| **META PLATFORMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>ORDER</u>**

Now before the Court is Defendant Meta Platforms, Inc.'s ("Meta") Motion to Dismiss (Doc. No 47). Plaintiff Tiffany Frost has responded in opposition (Doc. No. 50), and Defendant has filed a Reply (Doc. No. 52).

*I. Plaintiff's Allegations*

Plaintiff, an Oklahoma resident, brings this action against Meta, a Delaware corporation with its principal place of business in California. *See* Am. Compl. (Doc. No. 3) at 1; Def.'s Mot. to Dismiss at 14 & n.5; *see also* Pl.'s Suppl. (Doc. No. 8).

Plaintiff alleges that she is the owner of TDF Digital, LLC, "which relied on Meta's advertising platforms for business outreach and revenue generation." Am. Compl. at 2. On or about May 9, 2025, Plaintiff launched a "retargeting ad campaign" using Meta's ad services. *Id.* On May 12, 2025, Plaintiff discovered that the campaign excluded high-value segments, "defeating its purpose." *Id.*

Plaintiff submitted support requests to Meta and "demanded answers," but Meta failed to provide meaningful support. *Id.*; *id.* Ex. 2, Pl.'s Timeline (Doc. No. 3-2).

Following Plaintiff's "complaint," Meta imposed "unjustified account restrictions" upon Plaintiff. Am. Compl. at 2; *see also* Pl.'s Suppl. Ex. 3, Pl.'s Social Media Suppression (Doc. No. 8-3). Plaintiff also began receiving "harassing phone calls from 'No Caller ID,' toll-free, and geo-spoofed numbers," which intensified after each attempt Plaintiff made to "settle the dispute." Am. Compl. at 2; *see also id.* Ex. 7, Pl.'s Call Log (Doc. No. 3-7); Pl.'s Suppl. Ex. 2, Pl.'s Emails to Meta (Doc. No. 8-2).

Plaintiff alleges: Meta breached the agreement to provide advertising services; Meta retaliated against Plaintiff by increasing restrictions and contacting Plaintiff repeatedly; Meta "was negligent in its provision of ad services and in its handling of support"; and Meta inflicted emotional distress upon Plaintiff. Am. Compl. at 2-3. Plaintiff asserts Meta's actions have caused "economic damage, loss of revenue, and interference with Plaintiff's legal and academic progress." *Id.* at 3. Plaintiff seeks at least $25 million in compensatory damages, as well as punitive damages and injunctive relief. *See id.* at 3-4.

*II. Plaintiff's Burden to Establish Personal Jurisdiction*

Meta seeks dismissal on several grounds, including a lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See* Def.'s Mot. to Dismiss at 8, 13-19.

When the court's jurisdiction over a defendant is contested, the plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). Personal jurisdiction "is an essential element of the jurisdiction of a district court," and without it, "the court is powerless to proceed to

an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (omission and internal quotation marks omitted).

Where, as here, the court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff must make "a prima facie showing of personal jurisdiction to defeat the motion." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal quotation marks omitted). A plaintiff "may make this showing through affidavits or other written materials." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). For purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted as true to the extent they are uncontroverted by the defendant's affidavits. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). "Conclusory allegations, however, need not be credited by [the] court and will not suffice to defeat a Fed. R. Civ. P. 12(b) motion." *Dental Dynamics*, 946 F.3d at 1228 (internal quotation marks omitted).

### *III. Rule 4(k)(1)(A) and Minimum-Contacts Analysis*

To establish personal jurisdiction over a nonresident in this diversity action, Plaintiff must demonstrate that Meta "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"—in this case Oklahoma. Fed. R. Civ. P. 4(k)(1)(A); *see Dental Dynamics*, 946 F.3d at 1228. Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the U.S. Constitution, as well as the Oklahoma Constitution. *See Dental Dynamics*, 946 F.3d at 1228-29 (citing Okla. Stat. tit. 12, § 2004(F)). Accordingly, the Court's inquiry is

reduced to a single question: whether the Court's exercise of jurisdiction over Meta is consistent with constitutional due process. *See id.* at 1229; *Dudnikov*, 514 F.3d at 1070.

"The Due Process Clause authorizes personal jurisdiction" if the defendant "purposefully established minimum contacts within the forum state" and the exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (internal quotation marks omitted). Depending on the facts, "an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic Ins. Co.*, 877 F.3d at 903; *accord OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

Here, Meta challenges Plaintiff's ability to show minimum contacts that would support the exercise of either general or specific jurisdiction. *See* Def.'s Mot. to Dismiss at 13-19. Plaintiff does not dispute Meta's contention that general jurisdiction is lacking, instead arguing that the Court should exercise specific jurisdiction in this matter. *See* Pl.'s Resp. at 2, 4-6; *see also* Def.'s Reply at 7; *Long v. Meta Platforms, Inc.*, No. 25-CV-181, 2025 WL 3454212, at *3 (E.D. Okla. Sept. 11, 2025) (R. & R.), *adopted in relevant part*, 2026 WL 147818 (E.D. Okla. Jan. 20, 2026).

*IV. Discussion*

A court may exercise specific jurisdiction over an out-of-state defendant if the plaintiff's lawsuit arises out of the defendant's contacts with the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (explaining that specific jurisdiction "depends on

an affiliation between the forum and the underlying controversy" (alteration and internal quotation marks omitted)). Thus, to establish minimum contacts for specific jurisdiction, the plaintiff must show: (1) that the defendant "purposefully directed its activities at residents of the forum state"; and (2) that "the plaintiff's injuries . . . [arose] out of the defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 904 (alteration and internal quotation marks omitted). If the plaintiff makes this showing, the court may exercise specific jurisdiction unless the defendant presents a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted); *see also SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1272 (D. Utah 2014).

*A. Minimum Contacts: Purposeful Direction*

The "purposeful direction" requirement "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Purposeful direction analyses traditionally tend to focus on a defendant's contacts such as travels to the forum, communications with forum residents, the course of business dealings with forum residents, and so forth." *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013).

When alleged contacts with the forum state were made via the internet, the "purposeful direction" inquiry focuses on whether "the internet user or site *intentionally direct[ed]* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at 1240. Specifically, courts

consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* at 1241.

*1. Harmful Effects in the Forum State*

The Tenth Circuit has identified three distinct frameworks "for testing whether a defendant has purposefully directed its activities at the forum state": (1) "harmful effects in the forum state"; (2) "continuing relationships with forum state residents"; and (3) "deliberate exploitation of the forum state market." *XMission, L.C. v. PureHealth Rsch.* ("*PureHealth*"), 105 F.4th 1300, 1309 & n.9 (10th Cir. 2024) (internal quotation marks omitted).

Plaintiff first argues that purposeful direction can be shown under the "harmful effects" framework, which was set forth in *Calder v. Jones*, 465 U.S. 783 (1984), and has been applied by the Tenth Circuit in cases "involving the Internet." *PureHealth*, 105 F.4th at 1309 (internal quotation marks omitted). Pursuant to this test, Plaintiff must show that Meta's "intentional conduct" "targets and has substantial harmful effects in" Oklahoma. *Id.* (internal quotation marks omitted). Specifically, Plaintiff must allege that Meta committed: (1) "an intentional action"; (2) "that was . . . expressly aimed at" Oklahoma; (3) "with . . . knowledge that the brunt of the injury would be felt in" Oklahoma. *Dudnikov*, 514 F.3d at 1072. In other words, Oklahoma "itself must be the focal point of the tort." *Id.* at 1074 n.9 (internal quotation marks omitted).

Plaintiff argues that personal jurisdiction is established under this test because Meta "*knew* Plaintiff's state of residence" when Meta "market[ed] [its] advertising platform to

business owners in Oklahoma" and then entered into a contract with Plaintiff. Pl.'s Resp. at 4-6. But neither the Amended Complaint nor the remainder of the record identifies Meta's alleged marketing efforts into Oklahoma. Plaintiff cites an email she received from Meta promoting its advertising platform; that email is generic in nature, however, and there is no evidence showing it was targeted to Oklahoma or Oklahomans in any way. *See* Pl.'s Resp. at 5; Meta Email of June 23, 2025 (Doc. No. 13-4) at 2-4; *see also Long*, 2025 WL 3454212, at *4 (rejecting the plaintiff's argument that Meta's collection and utilization of personal data "to deliver targeted advertisements to Oklahoma citizens" is sufficient to support the exercise of specific jurisdiction).[1] Nor does Meta's entering into, and allegedly breaching, a contract with an Oklahoma resident establish that Meta "intended harm" to Plaintiff "occurring primarily or particularly in" Oklahoma. *Shrader*, 633 F.3d at 1241; *cf. Romero v. Meta Platforms, Inc.*, No. 23-cv-3306, 2024 WL 1554826, at *4 (D.S.C. Mar. 14, 2024) (R. & R.) (recommending dismissal under Rule 12(b)(2) where the plaintiff failed to allege that Meta's company "has directed electronic activity in South Carolina by targeting that state in particular"), *adopted*, 2024 WL 3466403 (D.S.C. July 19, 2024). Plaintiff therefore does not show that Meta intended "to create effects specifically in the forum state." *Old Republic Ins. Co.*, 877 F.3d at 917 n.35.

[1] Even if purposefully directed at residents of Oklahoma, the email would not support the exercise of personal jurisdiction over Meta because Plaintiff's alleged injuries could not "arise out of" an email that was sent after the Amended Complaint was already filed. *Schrader*, 633 F.3d at 1239 (internal quotation marks omitted).

*2. Continuing Relationships with Forum Residents*

Liberally construed,[2] Plaintiff also argues that personal jurisdiction lies due to Meta's continuing relationships with Oklahoma residents. *See* Pl.'s Resp. at 4-5; *PureHealth*, 105 F.4th at 1309 & n.9. Plaintiff argues that Meta "accepted payment" from and "provided ongoing access to analytics and account support" to Plaintiff, thereby purposely directing its activities into Oklahoma. Pl.'s Resp. at 4.

Meta's relationship with Plaintiff, "standing alone, is an insufficient basis for jurisdiction." *Old Republic Ins. Co.*, 877 F.3d at 905 (internal quotation marks omitted). Rather, the Court "must evaluate the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," to determine whether Meta's "continuing relationships and obligations" with Oklahoma residents satisfy the purposeful direction requirement. *Id.* (internal quotation marks omitted). Plaintiff fails to plausibly show that Meta negotiated with Plaintiff or created substantial ongoing obligations with Plaintiff or other Oklahoma residents. *See generally id.* (noting that sufficient purposeful direction has been found where a defendant "entered a contractual relationship that envisioned continuing and far-reaching contacts in the forum State" (internal quotation marks omitted)).

Further, Plaintiff cannot establish Meta's connections to the forum state by alleging that she and her business were "injured in" Oklahoma due to the breach of contract or

[2] Plaintiff submitted the relevant filings prior to becoming a licensed attorney. Accordingly, the Court affords them a liberal construction. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Meta's response to Plaintiff's complaints. *Romero*, 2024 WL 1554826, at *4; *see* Pl.'s Resp. at 5. "A plaintiff's contacts with the forum state cannot drive the jurisdictional analysis, and it is *Defendant's* contacts with the forum that matter." *Keanaaina v. Nat'l Collegiate Athletic Ass'n*, No. 26-CV-01283, 2026 WL 1213385, at *5 (D. Colo. May 4, 2026) (citations and internal quotation marks omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff has not shown a meaningful connection in this case.

*B. Summary*

Based upon the above, the Court concludes that Plaintiff has failed to establish, pursuant to either the harmful effects or the continuing relationships test, that Meta has purposefully directed its activities at residents of Oklahoma. *See Old Republic Ins. Co.*, 877 F.3d at 904-05; *PureHealth*, 105 F.4th at 1309 n.9. Plaintiff therefore cannot make a prima facie showing of personal jurisdiction over Meta. The Court need not address the additional arguments in the Motion to Dismiss.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 47) is GRANTED. The Amended Complaint is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

A separate judgment shall be entered.

IT IS SO ORDERED this 22nd day of September, 2026.

CHARLES B. GOODWIN
United States District Judge